, Mr. Woodbury. Thank you, Your Honors. May it please the Court, my name is Tom Woodbury. And today marks a career first for me, Your Honors. After 25 years of advocating for public lands protection, I find myself in the unusual position of asking this Court to defer to the United States Attorney's Office. To be precise, I'm asking you to defer to the agency's clear, unequivocal, and logical interpretation of the form bill set forth in the record for this case. It's a well-established principle of law, based upon a long line of U.S. Supreme Court decisions, that in an administrative record case, your decision must be based upon the record before you, and not some new record established in litigation. More specifically, the Forest Service's interpretation of its own implementing procedures for categorical exclusions are entitled to substantial deference from this Court, as noted in an opinion authored by Judge Ebel in Citizens Committee v. U.S. Forest Service. And yet, the Department of Justice's own official and detailed interpretation in the record in this case, concerning the meaning, intent, and practical application of the form bill categorical exclusion. As it turns out, these same contrarian arguments were presented to the Ninth Circuit in the Ilano case, which postdates the lower court's decision in this case. And the Ninth Circuit chose to follow the much more sensible course of holding in effect that the form bill categorical exclusion is, as a matter of law, a categorical exclusion created by statute, and not a statutory exception to NEPA. It necessarily follows from that sensible determination that the extraordinary circumstances review required under NEPA's regulations, before taking advantage of a categorical exclusion, is itself reviewable under the Administrative Procedures Act, as is the service's compliance with the scoping requirement also required in the form bill. Why was the Farm Act exclusion necessary? Couldn't the Forest Service had adopted a categorical exclusion here under its existing regulatory authority? It could have. I mean, it has. It could do these projects without the statute, right? This is kind of the first major categorical exclusion that Congress has formulated. But could the Forest Service have done it anyway without the legislation? By rule. Yeah, by rule. Yes. So what was the purpose of the statutory empowerment then, if the Forest Service already had the authority to do these projects? I suppose to impress upon the Forest Service Congress's concern with ongoing epidemics or the widespread epidemics. Wouldn't that suggest then that the regulatory requirements of the exceptional circumstances, extraordinary circumstances, and cumulative effects not be imported into the statute? No, because, I mean, that's the whole point of the categorical exclusion regulatory provisions. It's an expedited process that's well suited to this type of project. So the purpose of the statute was just to give a nudge to the Forest Service to do more of these projects? I'm sorry, Your Honor, I didn't quite catch that. What's the purpose of the statute? It's a statutorily created categorical exclusion, which refers to the Forest Service regulations. Well, the government's argument is that by virtue of the statute that that frees the Forest Service from some of the regulatory requirements, right? And that's what we're going to hear in a few minutes. I'm asking you, what's wrong with that argument? Why pass the statute if it does no work? The Department of Justice is arguing that, Your Honor. The Forest Service is very clear that this categorical exclusion is intended by Congress to be implemented as any other categorical exclusion, thus the use of the term categorical exclusion instead of statutory exception, and thus the requirement for scoping, another reference to the regulations by both Forest Service and CEQ implementing categorical exclusions. So the Forest Service has consistently told the public, in this case, that the two projects challenged here represent the Forest Service's initial efforts to achieve the greater Santa Fe Fireshed Coalition's goal to change conditions across a landscape of more than 100,000 acres. And the first question for the court relative to NEPA's application in this case is whether or not the Forest Service was required to consider cumulative effects as part of the consideration process or the scoping process or the extraordinary circumstances review process, because in this case they did not. Wasn't an extraordinary circumstances review done for both of the projects? The roadless, inventory of roadless areas? I'm sorry, the extraordinary. Circumstances review. There was extraordinary circumstance review in this case specific to the inventory of roadless areas, but that review did not consider cumulative effects of this type of treatment on the greater Santa Fe Fireshed. But you agree that the two decisions concluded there was no extraordinary circumstances? They did. So as Chief Judge Timkovich points out, it was done. My question is why doesn't that kind of undercut your argument? Well, we're basically challenging that determination. So you're not arguing extraordinary circumstances should have been considered and wasn't. You're arguing that somehow they did an inadequate job of considering extraordinary circumstances. So in Center for Biological Diversity versus Bosworth opinion written by Judge Timkovich, he says very clearly that the extraordinary circumstances review is a safety valve for considering the potential for larger cumulative impacts when considering categorically excluding a project. The difference between this case and the case Bosworth was that in Bosworth Judge Timkovich had to sort of theorize, well, it's true that if there were theoretically a number of different projects in the same landscape, then the extraordinary circumstance review would be an adequate safety valve for the Forest Service to be required to consider those cumulative effects. The difference in this case is that it's not theoretical. These projects are actually part of a larger project, a programmatic project to fireproof this fireshed, to do these kind of treatments on over 70,000 acres of Forest Service lands in addition to treatments on the balance of the 107,000 acres that are being conducted by private and municipal agencies. So we have a larger project. We have the issue of cumulative effects, and that should have precluded the agency from categorically excluding these two projects. Her locker in the declaration stated that other projects in the fireshed were speculative at the time they reached the decision for these projects. And if the projects are speculative, doesn't that mean that the cumulative effects review is not necessary because the projects aren't reasonably foreseeable at the time the agency made the decision? Well, we know from the record that at the time the agency made its decision, there were already 21,896 acres of projects that were either ongoing or planned, according to the Forest Service. So that represents about 20% of the entire fireshed and includes the 4,383 acres of the two projects at issue here. So if the Forest Service is saying those projects were ongoing or planned, then that's reasonably foreseeable. I'm not sure you answered the Chief Judge's question a few minutes ago. He said, so you agree there was an extraordinary circumstances review conducted? Yes. And he asked, so is your concern that they weren't conducted properly? And then you started citing a case, and I never heard an answer to your question. No, it wasn't done properly. So what? The way the courts have applied the categorical exclusion extraordinary circumstances review in the context of cumulative effects is basically that the scoping of the projects and the extraordinary circumstance review of the projects, both together involve consideration of cumulative effects. Scoping rule specifically says we will consider cumulative effects, but often, in the case here, in the scoping letters, there is no mention of cumulative effects. And so then, again, the safety valve kicks in, and under extraordinary circumstances review, then it's assumed that the cumulative effects review will be conducted there. And in this case, this case is unique because of the fact that you have this larger project and because of the fact that the NEPA regulations say that the Forest Service may not break a larger project down into smaller projects in order to avoid preparation of an environmental impact statement. And that's precisely what's happening here. The Forest Service has never pretended that these two projects are not part of a larger project, but they have actually segmented that larger project down into these two and other projects and are trying to categorically exclude them by not considering what are the environmental effects of eliminating 94% of all of the smaller trees on this larger landscape and then prescribe burning that will have mortality of another 30% of the larger trees and then repeating that every 15 years in an area that's largely roadless and has never been locked. And it's not a new issue. The Forest Service has tried to bring this project forward twice before and both times withdrew it because the regional forester said, you're not considering the impacts to the roadless area here. That's still the concern of the people that use this roadless area for recreation. It's a quite popular recreational area and it's unique in that it surrounds a wilderness area, so it's potentially wilderness. And, oh my goodness, and the largest trees are about 200 years old, which brings us to the other primary issue, which is the old growth compliance with the Forest Plan. And there's no dispute that they're required to comply with the Forest Plan. The Forest Plan requires old growth planning at the project level, which never happened here. Specifically, they're required to develop in any project 20% of the project area must be, if there is no existing old growth, which they say in this case is the fact, then they have to explain how they're going to develop old growth over time with 20% of the landscape. But the Forest Service says it did that. And in this case, the record is very clear that these treatments will preclude the development of old growth because there will never be enough trees to meet the minimum requirement for old growth stands. The record says very clearly these treatments are intended to keep the landscape in a mid-serial condition, and old growth only can develop in climax and late-serial conditions. So the whole point of this project is to fireproof this fireshed by creating open park-like stands. The Forest Service says it's not old growth because there's not enough large trees, and yet the intent and purpose of the project is to prevent there from ever becoming enough large trees. There will never be old growth on this landscape with these treatments. And it's a significant issue and relevant factor that was not considered in the record. They're not clear-cutting everything except the old growth. They're still leaving some of the younger trees. So why do you say there is no new potential old growth coming in a new generation of trees? Because old growth is not just large trees. So the Farm Act says that they have to maximize the extent of old growth and large trees. So I would say, yes, they did consider the impacts of the project on the large trees, and they are trying to preserve some large trees. However, they say it's not old growth because there's not enough large trees, and then they're eliminating those trees that would eventually become large trees, 16 inches and under. And so, therefore, there will not be a development of old growth habitat. Old growth habitat is more than just large trees. Large trees is basically a park, and that's basically what they're creating here is open park-like conditions that will not actually be suited to the wildlife that depends on old growth habitat conditions for their survival. Before you sit down, I want to make sure my question was answered. And so you do agree that the service performed an extraordinary circumstances review here, correct? They did. They did conduct an extraordinary circumstances review, but it did not consider the cumulative effects of this project in relation to the large trees. Combined to other projects ongoing in the fireshed. If I could reserve. You're over time, but I'll give you some rebuttal. Okay. Thank you, Your Honors. Let's hear from the Department of Justice, but not the Forest Service. Good morning, and may it please the Court. Eric Grant for the Forest Service. I'll start with the extraordinary circumstances review, Your Honor. It was done. It's on for the Hyde Park project on pages 45 and 46 of the appendix, and for the Pacheco Canyon project on pages 56 and 57. On the other hand, we did not brief in the district court and in our briefs here in this court a defense of that analysis. Of course, our primary argument is as a matter of statutory construction for which we seek no Chevron deference, a pure construction of the Healthy Forest Restoration Act, that Congress has excluded small projects like these two from the requirements of NEPA, and specifically this kind of project from the requirement of doing extraordinary circumstances review. But if you are combining many small projects, all of which are under the maximum limit permitted by statute, and over time there's going to be many of these within this particular Santa Fe forest, doesn't that really not follow the intent of the statute? I mean, isn't that really just subdividing the project so that you come within a safe harbor rule, but that if you looked at cumulative effects, you would have to consider the bigger plan? I respectfully disagree, Your Honor. I'm not advocating it, I'm just asking you the question. For a couple of reasons. One, I think whether extraordinary circumstances review applies, I think we're all agreed that the statute is very clear that the projects like these are categorically excluded from NEPA, and the cumulative impacts analysis, the segmentation analysis. Second, I would say these projects are distinct. There are maps of them on pages 94 and 142 of the record. They're separated by several miles, and for all of the plaintiff's allegations of tens or hundreds of thousands of acres of projects being done, these are the only two projects that have got off the ground in 20 years. What is the administrative record that supports the appellant's argument that was made to us today, that there's all these other projects in the Santa Fe Forest that are either underway or being planned? Your Honor, over the past 20 years, the Santa Fe Fireshed Coalition has been very concerned about catastrophic wildfires in this area, which has the watershed for the city of Santa Fe. That's indicated on the maps I just cited. And so there have been much discussion over the past two decades about protecting these forests from catastrophic wildfires. My question isn't about discussions over the last couple of decades. My question is what is there in this record administratively about these other projects planned or underway in the forest that was represented by the appellant? Your Honor, I am not aware of the appellant's evidence for these projects. Are you saying that on the administrative record, which we're limited to, we're going to look at that and we're going to find zero support for the proposition that there are other thinning projects planned or underway in the Santa Fe Forest? No, Your Honor, I don't think you will find zero. As I said, the Santa Fe Fireshed Coalition has been discussing that, and some of those discussions are recorded in the numerous documents in the administrative record. And does it support the large volume of projects that the appellant represented to us just now? No, it certainly does not, Your Honor. Does it have any quantification to it at all? I am not aware of the quantification. And again, despite Congress's twice enacting the Healthy Forest Restoration Act in 2003 and amending it in 2014, all the Forest Service has been able to do are these two relatively tiny projects of a few thousand acres each in a 1.6 million acre national forest. Is there a say on the ongoing completion of these projects? No, Your Honor, there is not. Is the project still underway then? It is still underway. As we referenced in our brief, there is a pending litigation in the District of Arizona that has enjoined some of the project area. The Pacheco Canyon project, at least Pacheco? I'm sorry, Your Honor, is not covered by that injunction. Are these two projects? I thought they were. No, one is covered and one is not. And I should also add that... One is being stayed and one is not? One of the two projects, in part, is subject to the District of Arizona's injunction. And which one is that? I have it here, Your Honor. And don't... Here we go. The status of the projects. Unfortunately, I don't seem to have that right in front of me. We'll find it in the record at some point. Is it in the record? It is not, Your Honor, because the proceedings in the District of Arizona have post-dated the record in this case. But I suppose the Arizona proceedings are public records, though. They are public record. And I should add, Your Honor, that on December 27th, the government moved to dissolve the injunction in Arizona. And that motion has been fully briefed and is awaiting... To dissolve it entirely or just as it relates to New Mexico? Dissolve it as it relates to the Santa Fe National Forest and other national forests for basically having complied with the court's instructions to reinitiate consultation between the Forest Service and the Fish and Wildlife Service and to reissue a biological opinion. So... Coming back to the statutory argument that we diverted you from, the statute doesn't use mandatory language. It uses what appears to be discretionary language in directing the Forest Service review here. The Forest Service did an extraordinary circumstances review, and I think your position is that they need not do so. But take in combination the discretionary language of the statute, the regulations that apply to other categorical exclusions, why doesn't that suggest that Congress was directing the Forest Service to,  but, B, at least conduct an extraordinary circumstances slash cumulative effects review? Your Honor, our primary argument is applying normal canons of statutory construction, namely the canon from Rossello v. United States and from Dean v. United States, that Congress, when it deliberately omits a particular term from a statute, courts must not read into the statute that omitted term. And what we have here is a very distinct contrast between these two types of projects. A distinct contrast is different from a deliberate contrast. You pointed out the distinction. This project has different language than other closely related provisions in the statute, but that doesn't show it's deliberate. So you've morphed between distinct and deliberate. Do you have evidence that this was a deliberate change? Well, Your Honor, I would respectfully direct you to the statute in the Healthy Forests Act regarding applied silvicultural assessments, and that's Section 6554, and in particular, paragraph D2 capital B, Congress expressly, and this is on page 2A of our statutory appendix, Congress expressly made those kinds of projects shall be subject to the extraordinary circumstances procedures established by the Forest Service. And it did that in a second statute in the Healthy Forests Act, and that is Section 6591, little d, and in particular, paragraph C4, and that's on page 13A of our appendix. And these are hazardous fuels reduction projects. And Congress expressly provided that the Forest Service shall apply the extraordinary circumstances procedures under its regulations. Congress did not do that for these types of projects, these healthy forest projects that are under 3,000 acres each. Did it still require scoping, though? It did require scoping, Your Honor. Doesn't that require examining cumulative effects? No, it does not, Your Honor. Scoping is a very broad process defined in one of CEQ's regulations. That's 40 CFR Section 1501.7, and you can read through that regulation, and it does not require extraordinary circumstances review. But does it require cumulative effects review? No, it does not, Your Honor. And our scoping is the initial look at the project by the agency proposing the project to basically see what we're doing here, see what are the options. And, of course, the Forest Service did that with respect to both of these projects pursuant to Congress's direction. And those are, I can cite the court to the record for the Hyde Park project on page 46 and for the Pacheco Canyon project on page 57 of the appendix, the appellant's appendix. So I think scoping is yet another example of why the court should not infer an extraordinary circumstances review requirement. Congress knew how to impose in this statute compliance with specific NEPA concepts like scoping. But it did use a NEPA or at least regulatory concept with the categorical exclusions. And Mr. Woodbury said, well, if they wanted to make it clear, they would have used a phrase such as statutory exemption rather than the language that seems to track with the NEPA language. It's true, Your Honor, that categorical exclusion is a NEPA-like concept. That term, though, is not unknown to other areas of the law. It's defined in Black's Law Dictionary as an absolute exclusion from an otherwise applicable requirement. So that's, of course, Section 6591b-a-1, categorically excluded from the requirements of NEPA. Congress, as we cited in our brief, both in the 2003 statute and in the 2014 amendment, was concerned that not enough of these projects were being accomplished. And it wanted to speed the administrative process. And so it removed from the Forest Service the burden of having to comply with these detailed requirements for tiny little projects like this that are extremely salutary in preventing catastrophic wildfires and, in this case, protecting the watershed of the city of Santa Fe. How does special circumstances and cumulative effects fit together? I mean, is a cumulative effect a subpart of a special circumstance, or is there a separate issue usually in a statute, although not in this case, about cumulative effects? I mean, could cumulative effects be considered a subcomponent of special circumstances? Extraordinary circumstances. I think it's typically understood as part of extraordinary circumstances review. And in that respect, I'd like to cite this Court's opinion in Utah Environmental Congress v. Bosworth, which we cited on page 23 of our brief. When a categorical exclusion applies, this Court said, the cumulative effects analysis required by an environmental assessment need not be performed. But that was a regulatory exclusion. That wasn't a statutory exclusion. It was a regulatory exclusion, Your Honor, but I respectfully submit that a statutory exclusion is at least as efficacious and powerful as a regulatory exclusion. And I see that my time has expired, and I would urge this Court to affirm the judgment of the district court and allow these projects to proceed. Thank you. Could you give a minute 30 for rebuttal time for Mr. Woodbury? Thank you. And as I'm leaving, Your Honor, I see that it's the Pacheco Canyon project is allowed to proceed, and it's the Hyde Park project that's currently under the injunction from the District of Arizona. Thank you. I'll be brief, Your Honors. On the issue of cumulative effects analysis under the regulations, in the NEPA regulation from CEQ, it says, any procedures, I'm sorry, this is section 1508.4, categorical exclusion. Any procedures under this section shall provide for extraordinary circumstances in which a normally excluded action may have a significant environmental effect. Now, then you have to refer to the definition of a significant environmental effect, and it includes direct, indirect, and cumulative effects. So, therefore, any procedures, and then while counsel refers to the CEQ regs, he ignores the Forest Service's own regulations implementing the CEQ regs, which specifically addresses scoping for categorical exclusions, and again says that in, well, I'll just cite to that 220.6, 36 CFR 220.6, and. Did Wild Watershed have evidence in this administrative record that goes to cumulative effects and other projects, the scope of other projects? Will we find evidence in this record about all these other projects potentially underway? As far as the other projects. So, the other projects. You mentioned on the Santa Fe Fireshed. I'm just wondering if you put in evidence in the record on that, will we find that in the record? No, Forest Service did. So, at appellants app 30 is the map of the Santa Fe Fireshed project area with a reference and outlines of the other projects that are ongoing or planned, and then I believe that it was the supervisor or the Forest Service official that signed off on the project in the record in one of the meeting notes that we referenced in our brief where he refers to those as ongoing or planned. Was Herlocker wrong then in the declaration about no reasonably foreseeable project, or that other projects were speculative? I'm sorry, what was the question? Was Herlocker wrong in the declaration that other projects were speculative? Yes. Okay. All right, counsel, your time's expired. Counsel are excused. Thanks for the helpful arguments, and the case shall be submitted. We're going to do one more.